Jose TORRES

v.

STATE of Rhode Island.

No. 2009–347–Appeal.

Supreme Court of Rhode Island.

May 19, 2011.

James T. McCormick, Esq., Providence, for Applicant.

Virginia M. McGinn, Department of Attorney General, for State.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

The applicant, Jose Torres (applicant or Torres), appeals from the denial of his application for postconviction relief in Superior Court. On appeal, Torres argues that the grand jury indictment wrongly charged him with murder. Although he ultimately pled to a lesser charge of manslaughter, Torres contends that his conviction should be vacated because of what he contends was an inherently flawed indictment, which, he maintains, is a defect not waived by his plea. This case came before this Court for oral argument on March 29, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be decided summarily. After carefully considering the written and oral submissions of the parties, we conclude that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

■ The underlying facts are not disputed.[1] On or about December 31, 2002, Gregory Lovenbury purchased heroin

---

1. On appeal, Torres provides this Court with a transcript of the postconviction-relief proceedings of July 31, 2008, but does not provide a transcript of the June 24, 2004, trial date when he entered his guilty pleas in the underlying criminal matter. Although "[w]e consistently have declared that '[t]he deliberate decision to prosecute an appeal without providing the Court with a transcript of the proceedings in the trial court is risky business,'" we deem that Torres's "appeal is limited to a challenge to rulings of law that appear sufficiently on the record and [Torres] accepts the findings of the trial justice [in the underlying criminal matter] as correct * * *." *Sosa v. State*, 949 A.2d 1014, 1017 n. 4 (R.I. 2008) (quoting *731 Airport Associates, LP v. H & M Realty Associates, LLC*, 799 A.2d 279, 282 (R.I.2002)). As such, his decision to not file an official, Superior Court, trial-date transcript is not fatal to his appeal. *Id.* However, in the interest of providing enough background information to facilitate our review of the appellate issue, we first present a brief synopsis of the underlying criminal action, which was gleaned from the trial justice's uncontested narration of the facts at the postconviction-relief hearing.

from Torres. Gregory Lovenbury then gave the heroin to his wife, Lisa Lovenbury, who died of an overdose on or about January 1, 2003. During the investigation of his wife's death, Gregory Lovenbury provided the police with information about Torres that assisted their procurement of a search warrant for Torres's home. After the execution of the warrant and the seizure of contraband from his residence, Torres was charged by District Court complaint "with possession with intent to deliver heroin" and was released on bail. In April 2003, Torres was arrested for other heroin crimes in Providence County.

■ While Torres was incarcerated as a bail violator, a grand jury investigated his involvement in Lisa Lovenbury's death. In November 2003, the grand jury returned a three-count indictment, docketed as K1/03–630A, that charged Torres with count 1, "possession of heroin with intent to deliver in violation of" G.L.1956 § 21–28–4.01(a)(2),[2] count 2, "murder" in violation of G.L.1956 § 11–23–1,[3] and count 3, "unlawful delivery of a controlled substance, to wit, heroin to [Gregory Lovenbury] on or about December 31, [20]02 in violation of" § 21–28–4.01(a)(2). For the April 2003 heroin crimes, criminal information P2/03–2159A charged Torres with count 1, "possession with intent to deliver [heroin]" in violation of § 21–28–4.01(a)(2), and count 2, "possession of one ounce to one kilogram [of heroin] on or about April 19, 2003" in violation of § 21–28–4.01.1(a)(1).[4]

■ Torres proceeded to his trial date of June 24, 2004, but then began plea negotiations just before opening statements. With the assistance of his privately retained attorney and after the appropriate colloquy[5] with the trial justice, Torres pled guilty in K1/03–630A[6] to count 1, possession with the intent to deliver, and count 2, which as part of the plea negotiations, was amended from mur-

2. General Laws 1956 § 21–28–4.01(a)(1) states that "[e]xcept as authorized by this chapter, it shall be unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." Section 21–28–4.01(a)(2) further expounds that "[a]ny person who is not a drug dependent person * * * who violates this subsection with respect to a controlled substance classified in schedule I or II * * * is guilty of a crime * * *." Heroin is a schedule I drug. Section 21–28–2.08(c)(10).

3. General Laws 1956 § 11–23–1 states in relevant part: "Every murder * * * committed during the course of the perpetration, or attempted perpetration, of felony manufacture, sale, delivery, or other distribution of a controlled substance otherwise prohibited by the provisions of chapter 28 of title 21 * * * is murder in the first degree." This statutory provision describes what is known as felony murder. "The theory of felony murder is that a defendant does not have to have intended to kill one who dies during the course of certain statutorily enumerated felonies, or other inherently dangerous felonies, in order to be charged with murder. The intent to commit the underlying felony will be imputed to the homicide, and a defendant may thus be charged with murder on the basis of the intent to commit the underlying felony." State v. Oliveira, 882 A.2d 1097, 1111 (R.I.2005) (quoting State v. Stewart, 663 A.2d 912, 920 (R.I.1995)).

4. Section 21–28–4.01.1(a)(1) establishes that "[e]xcept as authorized by this chapter, it shall be unlawful for any person to manufacture, sell, or possess with intent to manufacture, or sell, a controlled substance classified in schedules I or II (excluding marijuana) or to possess or deliver * * * [o]ne ounce (1 oz.) to one kilogram (1 kg.) of a mixture or substance containing a detectable amount of heroin."

5. On appeal, Torres does not challenge the instant plea colloquy.

6. As a part of the plea negotiations, the state agreed to dismiss count 3 in K1/03–630A based on Rule 48(a) of the Superior Court Rules of Criminal Procedure.

der to manslaughter, a violation of § 11–23–3.[7] On both counts, Torres received identical sentences of thirty years, with eleven years to serve and the remaining nineteen years suspended, with probation. The sentences were to run concurrently. The same day, Torres also pled guilty to both counts charged in P2/03–2159A and again received two identical sentences of thirty years, with eleven years to serve and the remaining nineteen years suspended, with probation. The P2/03–2159A sentences were to run concurrently with each other and with the sentences imposed in K1/03–630A.

On or about February 16, 2006, Torres, acting *pro se,* filed an application for post-conviction relief in Kent County Superior Court, alleging newly discovered evidence, ineffective assistance of counsel, and that his guilty pleas to the amended charges were not knowing or intelligent. At Torres's request, an attorney was appointed to represent him on May 17, 2006. A supplemental memorandum was filed on his behalf on February 13, 2008, which focused on a single contention that the original indictment was flawed because it "failed to charge a crime." Torres argued that he could not be charged with murder based on the uncontested facts. He maintained that possessing drugs with the intent to deliver or actually delivering drugs to Gregory Lovenbury, although crimes, could not form the predicate felony for the death (and thereby the resultant felony murder) of Lisa Lovenbury, to whom Torres undisputedly did not deliver drugs. Although Torres had entered a guilty plea to a lesser charge of manslaughter, and not murder, he argued that the waiver effect of the plea was circumvented because the original indictment failed to state a criminal offense, a defect that he contended was an unwaivable issue.

In its opposition, submitted on July 19, 2007, prior to the submission of Torres's supplemental memorandum, the state focused on the voluntariness of Torres's plea and the effectiveness of Torres's privately retained counsel in securing the plea bargain for Torres. The state repeatedly noted that the sentences Torres received in exchange for his plea (four concurrent sentences of thirty years, with eleven years to serve and nineteen years suspended, with probation) were in no way disproportionate to the charges he was facing. The state averred that the bargained-for sentences actually were a much more favorable outcome than the potential sentences Torres could have endured had he been found guilty of these offenses at trial: life in prison for the murder charge, thirty years to serve for each charge of possession of heroin with the intent to deliver, and fifty years to serve for the charge of possession of over an ounce of heroin.

On July 31, 2008, after the parties indicated that they would rest on their memo-

7. Although § 11–23–3(a) articulates that "[e]very person who shall commit manslaughter shall be imprisoned not exceeding thirty (30) years," it is our caselaw that presents the elements of the crime. "Voluntary manslaughter is a lesser-included offense within the crime of murder and is defined as the 'unlawful killing of a human being without malice aforethought, either express or implied.'" *State v. Garcia,* 883 A.2d 1131, 1137 (R.I.2005) (quoting *State v. Fetzik,* 577 A.2d 990, 995 (R.I.1990)). "Malice aforethought is not an element of voluntary manslaughter because mitigating factors such as heat of passion arising from adequate provocation negate the defendant's specific intent to kill." *Garcia,* 883 A.2d at 1137. Involuntary manslaughter is "an unintentional homicide without malice aforethought, committed either in performance of an unlawful act not amounting to a felony or in the performance of a lawful act with criminal negligence." *State v. Hallenbeck,* 878 A.2d 992, 1008 (R.I.2005) (quoting *State v. Hockenhull,* 525 A.2d 926, 929 (R.I.1987)).

randa, the trial justice rendered his bench decision on Torres's application for post-conviction relief. First, he articulated that an applicant bears the burden of proving by a preponderance of the evidence that the conviction or sentence violated the Constitution of the United States or the Constitution of the State of Rhode Island. He then summarized the crux of Torres's constitutional contention: "[T]he presence of this [allegedly] invalid or illegal [felony-murder] charge tainted the entire plea bargain process in both cases [P2/03–2159A and K1/03–630A] and [Torres] should now be entitled to withdraw his guilty plea, * * * and re-enter plea negotiations based on a dismissal * * * of the * * * felony murder charge." The trial justice noted that Torres neither had moved to withdraw his guilty plea posttrial, nor had he filed a pretrial motion to dismiss the indictment.

Relying on Rhode Island caselaw, however, the trial justice found it unnecessary to address the constitutional question presented by Torres. He concluded that, regardless of an alleged defect in the original indictment, a plea waives any "prior [c]onstitutional infirmity" as long as defense counsel's advice to accept the plea was competent and effective, and the defendant voluntarily entered the plea. Applying this law to the instant matter, the trial justice examined the advice of Torres's trial counsel[8] based on the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He explained that a defendant bears the burden of satisfying *Strickland's* two-part inquiry that: (1) "counsel's per-

formance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* The trial justice then assessed that Torres had not made the necessary *Strickland* showing because his attorney was not deficient when he wisely recommended taking the state's plea offer, a significantly less onerous outcome than the possible sentences Torres could have faced if convicted of the charged offenses. He further declined "to engage in * * * speculation or conjecture" that "the entire course of the plea negotiation would have proceeded differently and to [Torres's] benefit had the original charge of felony murder been dismissed or not been brought in the first place." The trial justice nonetheless propounded *arguendo* that even if Torres's attorney had been ineffective when he advised him to plead guilty to the allegedly nonexistent crime of felony murder, Torres's argument was moot because Torres did *not* plead to felony murder; he pled to manslaughter. Torres, the trial justice observed, had not explained, on postconviction relief or at any other juncture, whether it was equally invalid for the state to charge him with manslaughter as it was to charge him with felony murder.

■ As for the legitimacy of the plea colloquy, the trial justice recalled that Torres's "plea was voluntarily and intelligently made," and he further concluded that Torres "entered into [the plea] with knowledge of his rights as well as the consequences of his plea, [and] that there was a factual basis for his plea." Given these dual findings with respect to the effective representation of the attorney who advised

---

8. We note that although Torres's postconviction-relief attorney did not pursue an argument for ineffective assistance of counsel, Torres's *pro se* application did raise this issue. In addition, the analysis of the voluntariness of the plea and the nature of the attorney's advice to take the plea necessarily required

the trial justice to examine the attorney's effectiveness in recommending this course of action. *Miguel v. State*, 774 A.2d 19, 22 (R.I. 2001). On appeal, however, Torres omits any challenges to the effectiveness of his trial attorney or postconviction-relief attorney.

Torres to take the plea and the voluntariness of Torres's plea, the trial justice found "that * * * applicant * * * waived any argument as to the original indictment being defective in that [c]ount 2 [murder] failed to charge a crime" and similarly that Torres's "privately-retained defense counsel was in no way ineffective." He accordingly denied Torres's application. Torres appealed the trial justice's decision the same day as it was rendered.[9] Final judgment was entered on August 5, 2008.

## II

### Standard of Review

"[P]ost-conviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." *Otero v. State*, 996 A.2d 667, 670 (R.I.2010) (quoting *Ballard v. State*, 983 A.2d 264, 266 (R.I.2009)); *see also* G.L.1956 § 10–9.1–1(a)(1) (establishing a statutory right to a postconviction-relief remedy when a constitutional violation is shown). "[T]he burden of proving, by a preponderance of the evidence, that postconviction relief is warranted" is upon the applicant. *Page v. State*, 995 A.2d 934, 942 (R.I.2010) (quoting *Larngar v. Wall*, 918 A.2d 850, 855 (R.I. 2007)). In conducting our review of a hearing justice's denial of an application for postconviction relief, this Court affords great deference to his findings of fact and will not disturb the hearing justice's ruling "absent clear error or a showing that the trial justice overlooked or misconceived material evidence." *Cote v. State*, 994 A.2d 59, 62 (R.I.2010) (quoting *Bustamante v. Wall*, 866 A.2d 516, 522 (R.I. 2005)). However, when a decision concerning postconviction relief "involv[es]

questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights," this Court's standard of review is *de novo*. *Washington v. State*, 989 A.2d 94, 98 (R.I. 2010) (quoting *Bustamante*, 866 A.2d at 522). "Even when the *de novo* standard is applied to issues of constitutional dimension, we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference in conducting our review." *Thornton v. State*, 948 A.2d 312, 316 (R.I.2008).

## III

### Discussion

As argued to the trial justice at the postconviction-relief hearing, Torres likewise bases his appeal to this Court on the contention that "as a matter of law, [his] conduct [did] not constitute felony murder" and that therefore his indictment was constitutionally invalid. Although Torres acknowledges that Rhode Island's murder statute enumerates that "the distribution of drugs" can be a predicate felony for felony murder, he maintains that there is no support in this jurisdiction for charging a drug distributor with felony murder based "solely on * * * the distributor's role in the chain of distribution of the drug which caused the death" and where the "distributor * * * had no contact with the victim." Torres contends that the applicability of felony murder to an overdose death turns on whether the drug distributor directly or indirectly provided drugs to the victim. He devotes several pages of his written submission to the nuances of direct versus indirect drug distribution and how various states approach this issue with respect to felony murder.

9. "Although [Torres's] notice of appeal was premature, it is nevertheless valid as final judgment was ultimately entered." *Poulin v.*

*Custom Craft, Inc.*, 996 A.2d 654, 658 n. 4 (R.I.2010).

Torres then reaches the threshold question as to whether his guilty plea to the amended charge of manslaughter waives all questions regarding the constitutionality of the original charge of murder. On this issue,[10] Torres acknowledges that a plea of guilty results in a defendant's "admit[ting] all of the essential elements of the crime charged and thereby waiv[ing] all non-jurisdictional defects, including alleged pre-plea constitutional violations." He maintains, however, that "a guilty plea does not waive a claim that the indictment fails to state an offense" or that the statute comprising the crime is unconstitutional, which he indicates are jurisdictional defects. To show that his indictment failed to state an offense, Torres relies heavily on *In re Hinton*, 152 Wash.2d 853, 100 P.3d 801, 803 (2004), an opinion of the Washington Supreme Court that vacated the petitioners' pleas or convictions based on second-degree felony murder in which assault was the charged predicate felony. Because the Washington court previously had determined that assault could not form the predicate felony for second-degree felony murder, the *Hinton* court assessed that the judgments and sentences were unconstitutional. *In re Hinton*, 100 P.3d at 803, 804. Torres analogizes his case to *Hinton*. He argues that the instant facts of delivering drugs to someone other than the victim cannot constitute the predicate crime for felony murder and that, therefore, he could not be charged with that crime. Torres concludes his appellate argument by stating that his plea to manslaughter cannot save this defective indictment because his conduct could not support a manslaughter charge either.

For its part, the state argues that Torres's decision to plead guilty "waive[s] his right to now attack the original charge of felony murder." It continues that because the indictment stated a valid crime under Rhode Island law, Torres is merely challenging the sufficiency of the evidence against him and not the jurisdiction of the Superior Court. The state asserts that

**10.** In another branch of Torres's position on this issue, he asserts that there is no waiver based on Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure because a challenge to whether the indictment states a crime need not be raised before trial. But then, seemingly contradicting his recitation of Rule 12(b)(2), Torres goes on to argue that once trial began, the only way he could challenge the indictment on this basis was to wait until the close of evidence, move for a judgment of acquittal, and risk life imprisonment if convicted. He maintains that his only "rational alternative" at that juncture was to take the plea. The Superior Court Rules of Criminal Procedure make clear that Rule 12(b)(2) is the usual means to challenge the content of an indictment. Rule 12(b)(2) states in relevant part:

"The defense of double jeopardy and all other defenses and objections based on *defects in the institution of the prosecution or in the indictment*, information, or complaint *other than that it fails to show jurisdiction in the court or to charge an offense* may be raised only by motion before trial. * * * *Failure to present* any such defense or objection as herein provided *constitutes a waiver thereof*, but the court for cause shown may grant relief from the waiver." (Emphases added.)

Although this Court agrees with Torres that an indictment's failure "to show jurisdiction in the court" or "to charge an offense" need not be raised in a pretrial motion to dismiss, the instant challenge to the indictment, as explained in the body of our opinion, quarrels with the indictment's application to Torres and the state's alleged lack of evidence (*i.e.*, "defects in the institution of the prosecution"). Regardless of how applicant frames the issue, his challenge does not show that the indictment failed to charge an offense. As such, a pretrial Rule 12(b)(2) motion to dismiss the indictment was the correct way to address his concerns on this matter. Torres's failure to so move and his subsequent plea forecloses our further examination of his indictment.

the *Hinton* case cited by Torres is distinguishable because felony murder based on assault did not exist as a crime in Washington on any set of facts, whereas felony murder based on drug distribution does exist in Rhode Island. Nonetheless, the state is careful to maintain its position that even if the indictment was defective, that alone would not deprive a trial court of jurisdiction. Although not specifically questioned on appeal, the state does its due diligence to attest that the record "affirmatively demonstrates" that Torres voluntarily and intelligently entered his plea with the assistance of an effective attorney.

## A

### Waiver by Plea

 Before embarking on whether the original criminal indictment charging Torres with murder violated his constitutional rights, we first must satisfy ourselves that Torres did not waive this challenge by pleading guilty to manslaughter. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Miguel v. State*, 774 A.2d 19, 22 (R.I.2001) (quoting *State v. Dufresne*, 436 A.2d 720, 722 (R.I. 1981)). Thus, in the case of a defendant who has pled guilty, "[t]he sole focus of an application for post-conviction relief * * * is 'the nature of counsel's advice concerning the plea and the voluntariness of the plea. If the plea is validly entered, we do not consider any alleged prior constitutional infirmity.'" *Gonder v. State*, 935 A.2d 82, 87 (R.I.2007) (quoting *Miguel*, 774 A.2d at 22). That said, although the general rule is that "a plea of guilty waives all nonjurisdictional defects, * * * [it] does not bar appeal of claims that the applicable statute is unconstitutional or that the indictment fails to state an offense." *United States v. Broncheau*, 597 F.2d 1260, 1262 n. 1 (9th Cir.1979); *see also Kolaski v. United States*, 362 F.2d 847, 848 (5th Cir. 1966) ("If an indictment or information is so defective as not to charge an offense, the sentence should be vacated * * *, notwithstanding the entry of a plea of guilty. One cannot make an effective plea of guilty when no offense is charged.") (citing *Marteney v. United States*, 216 F.2d 760, 762 (10th Cir.1954)).

On appeal, Torres does not contest specifically the voluntariness of his plea or his trial attorney's effectiveness at recommending he accept the state's bargain. As such, by pleading guilty, Torres is deemed to have waived any pre-plea constitutional arguments unless he, in fact, has presented the unwaivable issue that his indictment failed to state an offense.

## B

### Felony Murder Based on the Predicate Crime of Drug Distribution

 As Torres points out, this Court has not had the occasion to interpret our murder statute to establish whether a drug delivery crime can form the predicate basis for felony murder if the victim is not linked directly to the drug distributor. At this time, we still save that question for another day. However, it is without legitimate debate that, in Rhode Island, drug-distribution crimes can form the predicate felony for a felony murder charge. *See* § 11–23–1 ("Every murder * * * committed during the course of the perpetration, or attempted perpetration, of felony manufacture, sale, delivery, or other distribution of a controlled substance otherwise prohibited by the provisions of chapter 28 of title 21 * * * is murder in the first degree.").

As such, Torres's indictment is valid on its face. *See State v. Concannon*, 457 A.2d 1350, 1355 (R.I.1983) (holding that "we will not grant relief unless the indictment is so obviously defective as not to charge the offense alleged by any reasonable construction"). It is this posture that makes Torres's reliance on *Hinton* inapposite.

In *Hinton*, because state-court precedent previously declared that an assault could not form the predicate felony for felony murder (because of merger, see *In re Personal Restraint of Andress*, 147 Wash.2d 602, 56 P.3d 981, 988 (2002)),[11] the indictments failed to articulate a crime. *Hinton*, 100 P.3d at 804. In the simplest of terms, there was *no* set of circumstances that could make an indictment for murder based on the predicate felony of assault a valid crime in the state of Washington. *Id.* Accordingly, the *Hinton* petitioners' convictions, based on a non-existent crime, were vacated and their cases were remanded. *Id.* at 805.

■■■ Here, while Torres raises a reasonable question as to whether the state could actually prove the murder charges against him, he cannot contend that the charge set forth in the indictment is not a crime. *See* § 11–23–1 (establishing that drug crimes can form the predicate felony for felony murder). This Court has stated that "[w]hen an indictment is otherwise sufficient, a lack of evidentiary details establishing the facts of the offense does not invalidate that indictment * * *." *Concannon*, 457 A.2d at 1355; *see also State v.*

*Tower*, 984 A.2d 40, 44 (R.I.2009) (holding that " '[s]ubject-matter jurisdiction hinges on the allegations in the complaint, rather than what the state can prove at trial[;] [a] complaint that properly sets forth the crime charged is sufficient' to invoke jurisdiction") (quoting *State v. DelBonis*, 862 A.2d 760, 764 (R.I.2004)). Unlike the *Hinton* petitioners, Torres's indictment did not charge him with a nonexistent crime. As such, by voluntarily pleading guilty to a charge that was amended with his consent, Torres has waived any argument that the state could not have proven him guilty of murder. *See Miguel*, 774 A.2d at 22; *see also United States v. Broce*, 488 U.S. 563, 571, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (holding that "[r]espondents had the opportunity, instead of entering their guilty pleas, to challenge the theory of the indictments * * * [t]hey chose not to, and hence relinquished that entitlement").

## IV

### Conclusion

For the reasons elucidated in this opinion, we affirm the judgment of the Superior Court. The papers related to this case may be remanded to that court.

11. We note that the Washington legislature superseded the Washington court's constitutional assessment of merger for assault-based felony murder. *See In re Hinton*, 152 Wash.2d 853, 100 P.3d 801, 805 (2004) (recognizing the revision, but holding that the amendment could not apply retroactively to the petitioners). The Revised Code of Washington now expressly permits assault to form the predicate felony for second-degree felony murder. Wash. Rev.Code Ann. § 9A.32.050 (West Cum.Supp.2009).